# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NORTH DAKOTA

|  |  |  |
|---|---|---|
| JACQUELINE ZIMMERMAN, | : | |
| | : | |
| Plaintiff, | : | |
| v. | : | Case No. 1:16-cv-00064 |
| | : | |
| BLUE CROSS BLUE SHIELD OF ALABAMA, *et al.*, | : | |
| | : | |
| Defendants. | : | |
| | : | |

## MEMORANDUM OF CERTAIN DEFENDANTS IN SUPPORT OF MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE

# TABLE OF CONTENTS

**Page(s)**

PRELIMINARY STATEMENT ......................................................................... 1

PROCEDURAL BACKGROUND........................................................................ 1

FACTUAL BACKGROUND .............................................................................. 3

LEGAL STANDARDS ...................................................................................... 4

I.      PERSONAL JURISDICTION................................................................... 4

II.     VENUE .................................................................................................... 5

ARGUMENT ................................................................................................... 6

I.      THERE IS NO PERSONAL JURISDICTION OVER MOVING DEFENDANTS
        UNDER SECTION 12 OF THE CLAYTON ACT......................................... 6

        A.      Plaintiff Must Meet The Venue Requirement Under Section 12 To Use Its
                Nationwide Service Clause. ......................................................... 6

        B.      To Establish Section 12 Venue, Plaintiff Must Allege Sufficient Facts
                Showing Transaction Of Substantial Business In The District Of North
                Dakota. ..................................................................................... 6

        C.      Plaintiff Does Not Allege Sufficient Facts Showing That Moving
                Defendants Transact Substantial Business In The District Of North
                Dakota. ..................................................................................... 8

        D.      Jurisdiction Over Moving Defendants Pursuant To Section 12 Does Not
                Comport With Due Process. ......................................................... 9

                1.      Litigating In North Dakota Would Impose An Unreasonable
                        Burden On Moving Defendants. ......................................... 9

                2.      Federal Interests Do Not Outweigh This Burden. ................ 10

II.     PLAINTIFF CANNOT ESTABLISH PERSONAL JURISDICTION UNDER
        THE STATE LONG-ARM STATUTE. ...................................................... 12

        A.      Legal Standard .......................................................................... 12

        B.      Plaintiff Does Not Establish Minimum Contacts Because It Has Not
                Demonstrated Purposeful Availment By Moving Defendants. ........... 13

1.      Participation In BlueCard Or Similar Programs Does Not
        Constitute Purposeful Availment................................................. 13

2.      Moving Defendants Do Not Have Minimum Contacts Based On
        Alleged Intentional Causation Of Injury Or Tortious Conduct. .............. 17

C.      Plaintiff's Antitrust Causes Of Action Are Not Related To Moving
        Defendants' Contacts With North Dakota. ............................................. 18

D.      Based On Their Limited Contacts With North Dakota, Moving Defendants
        Would Not Reasonably Anticipate Being Haled Into Court There. .................... 18

E.      Plaintiff's Vague Conspiracy Allegations Do Not Establish Personal
        Jurisdiction................................................................................. 19

F.      Exercising Personal Jurisdiction Over Moving Defendants Would Not
        Comport With "Fair Play And Substantial Justice."............................ 20

III.    VENUE IS IMPROPER UNDER SECTIONS 4 AND 16 AND 28 U.S.C. § 1391. ....... 20

A.      There Is No Venue Under Sections 4 And 16 Of The Clayton Act..................... 20

B.      There Is No Venue Under 28 U.S.C. § 1391. ....................................... 21

CONCLUSION................................................................................. 22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Albert Levine Assocs. v. Bertoni & Cotti*,
  309 F. Supp. 456 (S.D.N.Y. 1970) ...................................................................7

*In re Amtrak Sunset Ltd. Train Crash in Bayou Canot, Ala. on Sept. 22, 1993*,
  923 F. Supp. 1524 (S.D. Ala. 1996)..................................................................4

*Anrig v. Ringsby United*,
  603 F.2d 1319 (9th Cir. 1979) .......................................................................11

*Asahi Metal Indus. Co. v. Super. Ct. of Cal.*,
  480 U.S. 102 (1987)........................................................................................10

*Austad v. U.S. Steel Corp.*,
  141 F. Supp. 437 (N.D. Cal. 1956) ..................................................................8

*Banana Distribs., Inc. v. United Fruit Co.*,
  269 F.2d 790 (2d Cir. 1959)............................................................................7

*Bayada Nurses, Inc. v. Blue Cross Blue Shield of Mich.*,
  No. 08-cv-1241, 2008 WL 2945388 (E.D. Pa. July 30, 2008) .........................14, 15

*Berg v. Blue Cross & Blue Shield of Utica-Watertown, Inc.*,
  No. C-93-2752, 1993 WL 467859 (N.D. Cal. Nov. 2, 1993) ..................................15

*Black v. JP Morgan Chase & Co.*,
  No. 2:10-CV-848, 2011 WL 4102802 (W.D. Pa. Aug. 10, 2011)..........................21

*Browning Enter., Inc. v. Rex Iron Mach. Prods. Co.*,
  504 F. Supp. 2d 1217 (N.D. Ala. 2007).............................................................20

*Buckley v. Robertson*,
  No. 1:96-cv-996-V, 1997 WL 33642373 (S.D. Ala. Apr. 18, 1997).......................5

*Burger King Corp. v. Rudzewicz*,
  471 U.S. 462 (1985)........................................................................12, 13, 18, 20

*Butler v. Beer Across Am.*,
  83 F. Supp. 2d 1261 (N.D. Ala. 2000) ..............................................................10

*Calder v. Jones*,
  465 U.S. 783 (1984)........................................................................................17

iii

*Choice Healthcare v. Kaiser Found. Health Plan of Colo.*,
    615 F.3d 364 (5th Cir. 2010) ...............................................................14, 15, 19

*Chrysler Corp. v. Gen. Motors Corp.*,
    589 F. Supp. 1182 (D.D.C. 1984) ....................................................................7

*Cleft of the Rock Found. v. Wilson*,
    992 F. Supp. 574 (E.D.N.Y. 1998) ..................................................................19

*Corr Wireless Commc'ns, L.L.C. v. AT & T, Inc.*,
    907 F. Supp. 2d 793 (N.D. Miss. 2012) ...........................................................6

*Daniel v. Am. Bd. of Emergency Med.*,
    428 F.3d 408 (2d Cir. 2005) .................................................................7, 8, 11

*Davis v. A & J Elecs.*,
    792 F.2d 74 (7th Cir. 1986) .............................................................................19

*Delong Equip. Co. v. Washington Mills Abrasive Co.*,
    840 F.2d 843 (11th Cir. 1988) ..........................................................................4

*Eagle Tech. v. Expander Americas, Inc.*,
    783 F.3d 1131 (8th Cir. 2015) ........................................................................12

*Eastman Kodak Co. of N.Y. v. S. Photo Materials Co.*,
    273 U.S. 359 (1927) ..........................................................................................7

*Fastpath, Inc. v. Arbela Techs. Corp.*,
    760 F.3d 816 (8th Cir. 2014) .............................................................15, 16, 19

*Fraser v. Smith*,
    594 F.3d 842 (11th Cir. 2010) ..........................................................................9

*Gates v. Wilkinson*,
    No. 01-cv-3145, 2003 WL 21297296 (S.D.N.Y. June 4, 2003) ........................7

*Goodyear Dunlop Tires Ops., S.A. v. Brown*,
    131 S. Ct. 2846 (2011) ...............................................................................12, 13

*Guinness Imp. Co. v. Mark VII Distribs., Inc.*,
    153 F.3d 607 (8th Cir. 1998) ..........................................................................12

*Hart v. Salois*,
    605 F. App'x 694 (10th Cir. 2015) .................................................................19

*Hi-Tex, Inc. v. TSG, Inc.*,
    87 F. Supp. 2d 738 (E.D. Mich. 2000) ...........................................................16

*Indus. Models, Inc. v. SNF, Inc.*,
No. 14 C 8340, 2015 WL 2399089 (N.D. Ill. May 18, 2015) ...................................................8

*Int'l Air Med. Servs. Inc. v. Triple-S Salud Inc.*,
No. 15-cv-149, 2015 WL 5158832 (D. Ariz. Sept. 3, 2015) ...................................................14

*Int'l Shoe Co. v. Washington*,
326 U.S. 310 (1945)...................................................................................................................12

*Intrust Fin. Corp. v. Entrust Fin. Credit Union*,
No. 11-cv-1312, 2012 WL 2993893 (D. Kan. July 20, 2012) .................................................16

*Jenkins Brick Co. v. Bremer*,
321 F.3d 1366 (11th Cir. 2003) ...............................................................................................21

*KM Enters., Inc. v. Global Traffic Techs., Inc.*,
725 F.3d 718 (7th Cir. 2013) ..........................................................................................5, 7, 11

*Master v. Epps*,
No. 1:14-cv-129, 2014 WL 6626439 (D.N.D. Nov. 21, 2014)...........................................12, 18

*McFadin v. Gerber*,
587 F.3d 753 (5th Cir. 2009) ...............................................................................................14, 16

*Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*,
288 F.3d 1264 (11th Cir. 2002) ..................................................................................................5

*Mercantile Capital, LP v. Fed. Transtel, Inc.*,
193 F. Supp. 2d 1243 (N.D. Ala. 2002) ......................................................................................4

*Mewbourne v. Cheytac, USA, LLC*,
No. 2:12-CV-0661, 2013 WL 1346569 (N.D. Ala. Mar. 29, 2013) ...........................................5

*Murdoch v. Rosenberg & Assocs., LLC*,
875 F. Supp. 2d 6 (D.D.C. 2012) .............................................................................................22

*Myers v. Casino Queen, Inc.*,
689 F.3d 904 (8th Cir. 2012) ...................................................................................................18

*Estate of Myhra v. Royal Caribbean Cruises, Ltd.*,
695 F.3d 1233 (11th Cir. 2012) ..................................................................................................5

*In re N.D. Pers. Injury Asbestos Litig. No. 1*,
737 F. Supp. 1087 (D.N.D. 1990)..............................................................................................19

*Perez v. Pan Am. Life Ins. Co.*,
96 F.3d 1442 (5th Cir. 1996) ...................................................................................................19

*Personalized Brokerage Servs., LLC v. Lucius,*
   No. 05-cv-1663, 2006 WL 208781 (D. Minn. Jan. 26, 2006) .................................................19

*Pocahontas Supreme Coal Co., Inc. v. Nat'l Mines Corp.,*
   90 F.R.D. 67 (S.D.N.Y. 1981) ..............................................................................................20

*Pritchett v. Paschall Truck Lines, Inc.,*
   714 F. Supp. 2d 1171 (M.D. Ala. 2010) ................................................................................5

*Republic of Panama v. BCCI Holdings (Luxembourg) S.A.,*
   119 F.3d 935 (11th Cir. 1997) ..........................................................................................9, 10

*Resolution Trust Corp. v. First Am. Bank,*
   796 F. Supp. 1333 (C.D. Cal. 1992) ....................................................................................14

*Sanderson v. Spectrum Labs, Inc.,*
   227 F. Supp. 2d 1001 (N.D. Ind.), *aff'd,* 248 F.3d 1159 (7th Cir. 2000)..........................7, 8

*Scullin Steel Co. v. Nat'l Ry. Utilization Corp.,*
   676 F.2d 309 (8th Cir. 1982) ...........................................................................................15, 16

*SFRL, Inc. v. Galena State Bank & Trust Co.,*
   No. 10-cv-4152, 2011 WL 4479065 (D.S.D. Sept. 22, 2011) ..............................................19

*In re U.S. Office Prods. Co. Sec. Litig.,*
   251 F. Supp. 2d 58 (D.D.C. 2003) .........................................................................................5

*United States v. Nat'l City Lines,*
   334 U.S. 573 (1948)..............................................................................................................11

*United States v. Scophony Corp. of Am.,*
   333 U.S. 795 (1948)................................................................................................................7

*Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co., KG,*
   646 F.3d 589 (8th Cir. 2011) ...........................................................................................15, 17

*Walden v. Fiore,*
   134 S. Ct. 1115 (2014)....................................................................................................14, 17

*West Virginia v. Morton Int'l, Inc.,*
   264 F. Supp. 689 (D. Minn. 1967)........................................................................................11

*Westor Theatres v. Warner Bros. Pictures,*
   41 F. Supp. 757 (D.N.J. 1941) ..............................................................................................11

*Whittaker v. Med. Mut. of Ohio,*
   96 F. Supp. 2d 1197 (D. Kan. 2000).....................................................................................14

*Willingway Hosp., Inc. v. Blue Cross & Blue Shield of Ohio*,
    870 F. Supp. 1102 (S.D. Ga. 1994)..................................................................6, 11

*World-Wide Volkswagen Corp. v. Woodson*,
    444 U.S. 286 (1980)..........................................................................................18

**Statutes**

15 U.S.C. § 15.......................................................................................................20

15 U.S.C. § 22............................................................................................. *passim*

15 U.S.C. § 26.......................................................................................................20

28 U.S.C. § 1391...........................................................................................2, 20, 21

**Other Authorities**

Fed. R. Civ. P. 4(k) ...............................................................................................12

Fed. R. Civ. P. 12(b) .............................................................................................22

N.D. R. Civ. P. 4(b) ..............................................................................................12

## PRELIMINARY STATEMENT

Certain defendants[1] move to dismiss this action in North Dakota because plaintiff Jacqueline Zimmerman has not, and cannot, allege sufficient facts or viable legal theories to establish personal jurisdiction or venue over them.  These Moving Defendants do not do business, and do not have meaningful contacts, sufficient to confer personal jurisdiction or proper venue in North Dakota.

## PROCEDURAL BACKGROUND

This case is expected to be centralized in a multidistrict litigation comprising dozens of class actions brought by providers and subscribers in various jurisdictions throughout the country asserting antitrust claims against Blue Plans and the Blue Cross and Blue Shield Association.[2]  On September 30, 2013, a number of Blue Plans filed a motion to dismiss underlying provider and subscriber actions in Alabama and North Carolina[3] for lack of personal jurisdiction and improper venue.[4]  On April 9, 2014, the Court heard argument only on the question of "what rule of law should be applied to determine personal jurisdiction and venue in the antitrust context."  Mem. Op. at 24, June 18, 2014, Master File ECF No. 204.

---

[1] Moving Defendants are Blue Cross Blue Shield of Arizona ("BCBS-AZ"), Blue Cross of Idaho Health Service, Inc. ("BCI"), Blue Cross and Blue Shield of Kansas, Inc. ("BCBS-KS"), Blue Cross and Blue Shield of Kansas City ("BCBS-KC"), Blue Cross and Blue Shield of Nebraska ("BCBS-NE"), HealthNow New York Inc., BlueShield of Northeastern New York ("BSNENY") and BlueCross BlueShield of Western New York ("BCBSWNY"). HealthNow New York Inc. operates BSNENY and BCBSWNY (collectively, "HealthNow").

[2] On June 6, 2016, subscriber plaintiffs filed a Notice of Potential Tag-Along Actions in *In re Blue Cross Blue Shield Antitrust Litigation*, MDL No. 2406.  JPML ECF No. 355.  On June 9, 2016, the Judicial Panel on Multidistrict Litigation issued a conditional transfer order conditionally transferring this case to the multidistrict litigation; the transfer order will become final on or about June 17, 2016 if no objections are filed.  JPML ECF No. 356.

[3] Providers sued all Moving Defendants in the Northern District of Alabama in *Conway, et al. v. Blue Cross and Blue Shield of Alabama, et al.*, 2:12-cv-02532.  Subscribers sued all Moving Defendants in the Northern District of Alabama in *American Electric Motor Services, Inc. v. Blue Cross and Blue Shield of Alabama*, 2:12-cv-02169, and in the Western District of North Carolina in *Cerven v. Blue Cross and Blue Shield of North Carolina*, 2:12-cv-04169.

[4] Mot. of Certain Defs. to Dismiss for Lack of Personal Jurisdiction and Improper Venue, Master File ECF No. 125.

On June 18, 2014, the Court held that plaintiffs must satisfy the venue requirements of Section 12 of the Clayton Act if they intend to rely on its nationwide service of process provision to establish personal jurisdiction.  *Id.* at 28-29 (this approach outlined by the Seventh Circuit "is the correct rule of law").  The Court did not rule on any other substantive aspect of that motion.

On December 22, 2014, a number of Blue Plans renewed their motion to dismiss the underlying provider and subscriber actions in Alabama and North Carolina for lack of personal jurisdiction and improper venue.[5]  The Court directed the parties to engage in jurisdictional discovery regarding the moving defendants' contacts with Alabama and North Carolina.  Order at 3, May 27, 2015, Master File ECF No. 369.

On April 4, 2016, plaintiff filed this action in the District of North Dakota, naming all Blue Plans and the Blue Cross and Blue Shield Association as defendants.  Complaint ("Compl."), ECF No. 1.  Plaintiff alleges that this Court can assert personal jurisdiction over all Blue Plans under Section 12 or the North Dakota long-arm statute based on the following theories:  (1) participation in a conspiracy with overt acts in furtherance committed in North Dakota; (2) commission of torts or intentional acts causing injury or likely to cause injury in North Dakota; (3) entering into an anticompetitive agreement with a resident of North Dakota, which was performed at least in part in North Dakota; and/or (4) transaction of business or having members in North Dakota, via the BlueCard program or otherwise.  Compl. ¶ 13. Plaintiff alleges that venue is proper in the District of North Dakota under Sections 4, 12, and 16 of the Clayton Act, 15 U.S.C. §§ 15, 22, and 26, and the general venue statute, 28 U.S.C. § 1391. *Id.* at ¶ 14.

---

[5] Mot. of Certain Defs. to Dismiss for Lack of Personal Jurisdiction and Improper Venue, Master File ECF No. 313.

## FACTUAL BACKGROUND

None of the Moving Defendants is incorporated in or has its principal place of business in North Dakota.  The Moving Defendants have no offices or mailing addresses in North Dakota, and they do not own any assets or lease any real property in North Dakota.  Moving Defendants have no employees, representatives or agents for service of process in North Dakota.  Moving Defendants maintain no bank accounts and file no tax returns in North Dakota.[6]

Moving Defendants neither issue insurance contracts or policies, nor solicit business of any kind in North Dakota.  Moving Defendants do not exercise control over any subsidiaries who transact business in North Dakota.[7]  Moving Defendants are not registered or qualified to do business in North Dakota.

Moving Defendants do not provide group coverage or administrative services for groups headquartered in North Dakota.  Moving Defendants have insignificant member populations[8] in North Dakota.  Moving Defendants do not have any direct contracts with providers in North Dakota.  A miniscule percentage of Moving Defendants' members submitting claims in 2015 under the BlueCard program received services from providers in North Dakota.[9]

---

[6] BCBS-NE has not filed tax returns or paid taxes in North Dakota.  BCBS-NE will potentially file a tax return in North Dakota this year due to a small interest in an LLC.  BCBS-NE Aff. ¶ 9 (Ex. 5).

[7] One of BCBS-NE's subsidiaries, Azure Equity Management, LLC, owns a 50% interest in CoreLink Administrative Solutions, LLC ("CoreLink"), which is headquartered in Fargo, North Dakota.  CoreLink provides claims administration services to BCBS-NE.  *Id.* ¶ 11.

[8] The Moving Defendants contract with certain employer groups that have employees living in North Dakota, but they do not have significant member populations there.  The number of Moving Defendants' members who reside in North Dakota is as follows:  148 for BCBS-AZ; 836 for BCI; 549 for BCBS-KS; 188 for BCBS-KC; 632 for BCBS-NE; and 36 for HealthNow.  These numbers represent the following percentages of Moving Defendants' total group membership:  0.04% for BCBS-AZ; 0.15% for BCI; 0.08% for BCBS-KS; 0.06% for BCBS-KC; 0.1% for BCBS-NE; and 0.01% for HealthNow.  BCBS-AZ Aff. ¶ 15 (Ex. 1); BCI Aff. ¶ 15 (Ex. 2); BCBS-KS Aff. ¶ 15 (Ex. 3) (as of December 2015); BCBS-KC Aff. ¶ 15 (Ex. 4); BCBS-NE Aff. ¶ 15 (Ex. 5); and HealthNow Aff. ¶ 15 (Ex. 6).

[9] The percentages of Moving Defendants' total number of members who submitted BlueCard claims and received services from a provider in North Dakota in 2015 were:  0.46% for BCBS-AZ; 0.74% for BCI; 0.06% for BCBS-KC; 0.58% for BCBS-NE; and 0.03% for HealthNow.  The total number of Moving Defendants' members who received services in North Dakota through the BlueCard program in 2015 was:  268 for BCBS-AZ; 1192 for BCI;
(Continued...)

3

Plaintiff does not allege any act or event involving any of Moving Defendants in North Dakota.  For example, in asserting her antitrust claims, plaintiff does not plead any *facts* demonstrating that Moving Defendants entered into any agreements or otherwise engaged in any allegedly anticompetitive conduct in North Dakota.  Compl. ¶¶ 13, 270-327.  And while plaintiff alleges that all defendants transact business in North Dakota through the BlueCard program or otherwise (*see* Compl. ¶ 13(f)), she does not allege any facts showing specific actions taken by Moving Defendants through these programs in North Dakota.

## LEGAL STANDARDS

### I.    PERSONAL JURISDICTION

In order for the MDL court to exercise personal jurisdiction over Moving Defendants, personal jurisdiction must be proper in the state where each transferor court sits.  *In re Amtrak Sunset Ltd. Train Crash in Bayou Canot, Ala. on Sept. 22, 1993*, 923 F. Supp. 1524, 1527 (S.D. Ala. 1996).  Plaintiff "bears the initial burden of alleging personal jurisdiction by pleading sufficient material facts to establish the basis for exercise of such jurisdiction."  *Mercantile Capital, LP v. Fed. Transtel, Inc.*, 193 F. Supp. 2d 1243, 1247 (N.D. Ala. 2002).

Thus, plaintiff must establish both (1) a basis for service of process on Moving Defendants in North Dakota; and (2) a constitutionally-sufficient relationship between Moving Defendants and North Dakota.  *Delong Equip. Co. v. Washington Mills Abrasive Co.*, 840 F.2d 843, 847 (11th Cir. 1988).  Plaintiff may establish federal personal jurisdiction by pleading sufficient facts to show that Moving Defendants are amenable to suit either under the laws of

---

441 for BCBS-KC; 1739 for BCBS-NE; and 57 for HealthNow.  BCBS-AZ Aff. ¶ 16 (Ex. 1); BCI Aff. ¶ 16 (Ex. 2); BCBS-KC Aff. ¶ 16 (Ex. 4); BCBS-NE Aff. ¶ 16 (Ex. 5); and HealthNow Aff. ¶ 16 (Ex. 6).  The percentage of BCBS-KS's total number of members who submitted BlueCard claims and received services from a provider in North Dakota in 2014 was 0.495%.  The total number of BCBS-KS's members who received services in North Dakota through the BlueCard program in 2014 was 594.  BCBS-KS Aff. ¶ 16 (Ex. 3).

North Dakota or under a federal statute providing nationwide service of process.  *KM Enters., Inc. v. Global Traffic Techs., Inc.*, 725 F.3d 718, 723 (7th Cir. 2013) (citing Fed. R. Civ. P. 4(k)(1)(A) and (1)(C)).  Defendants are entitled to the protections of due process under either approach.  *Id.*

Where, as here, defendants challenge jurisdiction with supporting affidavits, "the burden [ ] shifts back to the plaintiff to produce evidence supporting jurisdiction."  *Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1269 (11th Cir. 2002).  Although the Court must construe all reasonable inferences in favor of plaintiff, when evidence conflicts it "is not obligated to accept mere legal conclusions posited as facts in an affidavit."  *Mewbourne v. Cheytac, USA, LLC*, No. 2:12-CV-0661, 2013 WL 1346569, at *11 (N.D. Ala. Mar. 29, 2013) (citing *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1276-77 (11th Cir. 2009)).

## II.    VENUE

An MDL plaintiff also bears the burden of showing that venue is proper in the transferor court as to each Moving Defendant.  *Pritchett v. Paschall Truck Lines, Inc.*, 714 F. Supp. 2d 1171, 1172 (M.D. Ala. 2010); *In re U.S. Office Prods. Co. Sec. Litig.*, 251 F. Supp. 2d 58, 65 (D.D.C. 2003).  If Moving Defendants' affidavits controvert the facts alleged in the complaint, plaintiff must respond with affidavits.  *Estate of Myhra v. Royal Caribbean Cruises, Ltd.*, 695 F.3d 1233, 1239 (11th Cir. 2012).  Plaintiff cannot meet this burden with "conclusory or unsupported statements."  *Buckley v. Robertson*, No. 1:96-cv-996-V, 1997 WL 33642373, at *4 (S.D. Ala. Apr. 18, 1997).

## ARGUMENT

**I.     THERE IS NO PERSONAL JURISDICTION OVER MOVING DEFENDANTS UNDER SECTION 12 OF THE CLAYTON ACT.**

### A.     Plaintiff Must Meet The Venue Requirement Under Section 12 To Use Its Nationwide Service Clause.

Plaintiff cannot rely on Section 12 of the Clayton Act as a basis for personal jurisdiction over Moving Defendants in North Dakota if Moving Defendants are not amenable to service in the District of North Dakota under Section 12.  *See* Mem. Op. at 24-28, June 18, 2014, Master File ECF No. 204 (citing *KM Enters.*, 725 F.3d at 730).  Where a federal statute like the Clayton Act provides for service of process, courts generally determine whether a defendant can properly be served with process under the statute, and then determine whether "that service comports with the constitutional principles of due process."  *Willingway Hosp., Inc. v. Blue Cross & Blue Shield of Ohio*, 870 F. Supp. 1102, 1104 (S.D. Ga. 1994).  This Court held that the "integrated" reading of Section 12 is the correct one, and therefore plaintiff must show that venue in the District of North Dakota is proper under Section 12 if she intends to rely on that provision's nationwide service clause to establish personal jurisdiction.

### B.     To Establish Section 12 Venue, Plaintiff Must Allege Sufficient Facts Showing Transaction Of Substantial Business In The District Of North Dakota.

To establish venue under Section 12, plaintiff must show that Moving Defendants either: (1) are inhabitants of the district; (2) are found in the district; or (3) transact business in the district.  15 U.S.C. § 22.  Plaintiff does not allege that Moving Defendants are inhabitants of or are found in the District of North Dakota.[10]  Instead, plaintiff alleges that this Court has personal

---

[10] Corporate defendants are "inhabitants" of the state where they are incorporated.  *Corr Wireless Commc'ns, L.L.C. v. AT & T, Inc.*, 907 F. Supp. 2d 793, 800 (N.D. Miss. 2012).  "Being found" is "generally equated with 'doing business' there" but requires a greater degree of business activity than that required for "transacting business."  *See id*.

jurisdiction over Moving Defendants because they transact business in the District of North Dakota.  *See* Compl. ¶ 13(f).  "Transacting business" means "doing business" of a "substantial character."  *KM Enters.*, 725 F.3d at 731 (quoting *United States v. Scophony Corp. of Am.,* 333 U.S. 795, 807 (1948)).  The touchstone for Section 12 venue is transacting business of a "substantial character."  *Eastman Kodak Co. of N.Y. v. S. Photo Materials Co.*, 273 U.S. 359, 373 (1927).

The "substantial character" test is fact-specific.  *See Scophony Corp.*, 333 U.S. at 819 (Frankfurter, J., concurring); *Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 429 (2d Cir. 2005) (under Section 12, "the propriety of venue turns on the nature of the corporate defendant's business"); *Albert Levine Assocs. v. Bertoni & Cotti*, 309 F. Supp. 456, 458 (S.D.N.Y. 1970) ("Each case of this kind is governed by its individual facts . . . .").  "[A] few isolated and peripheral contacts with the" district do not indicate a substantial transaction of business.  *Gates v. Wilkinson*, No. 01-cv-3145, 2003 WL 21297296, at *1 (S.D.N.Y. June 4, 2003) (quotation omitted).  Substantiality may be shown by:  using representatives to solicit business in the district, *Eastman Kodak*, 273 U.S. at 374; maintaining offices in the district, *Banana Distribs., Inc. v. United Fruit Co.*, 269 F.2d 790, 794 & n.8 (2d Cir. 1959); or exercising extensive control over a subsidiary or distributor transacting business in the district, *Chrysler Corp. v. Gen. Motors Corp.*, 589 F. Supp. 1182, 1200-02 (D.D.C. 1984).

Other factors relied on to assess substantiality include:  "the extent of business solicitation and advertising within the district, the dollar amount and percentage of sales in the district, and the continuity and regularity of the defendant's business activities in the district." *Sanderson v. Spectrum Labs, Inc.*, 227 F. Supp. 2d 1001, 1007 (N.D. Ind.), *aff'd*, 248 F.3d 1159 (7th Cir. 2000); *see also KM Enters.*, 725 F.3d at 731-32 (finding that limited number of sales,

which constituted a miniscule percentage of defendant's total sales, "provid[ed] only the weakest support for venue"); *Indus. Models, Inc. v. SNF, Inc.*, No. 14 C 8340, 2015 WL 2399089, at *2 (N.D. Ill. May 18, 2015) (finding no venue under Section 12 where less than 1% of defendant's sales occurred in the forum).  Courts consider these factors in the context of the nature of defendant's business and industry.  *Daniel*, 428 F.3d at 429.

C.    **Plaintiff Does Not Allege Sufficient Facts Showing That Moving Defendants Transact Substantial Business In The District Of North Dakota.**

Plaintiff's bare allegation that Moving Defendants "transact business" does not meet her burden to "plead sufficient *facts* demonstrating that the defendant transacts business of a substantial nature within the district." *Sanderson*, 227 F. Supp. 2d at 1007 (emphasis added). Plaintiff cannot allege such facts because Moving Defendants meet none of the indicia of substantially transacting business in the District of North Dakota.  They do not solicit or advertise in the District.  They have no employees or representatives who are located in the District.  They do not have offices or own real property in the District.  They do not exercise control over any subsidiary or affiliate who transacts business there.  They do not offer insurance or other products in the District.  The number of members who happen to reside or receive treatment in North Dakota is insubstantial, and constitutes a small percentage of their business in relation to their total membership.  In the context of the entire health insurance industry, the minuteness of the percentage is even more significant.  *See Austad v. U.S. Steel Corp.*, 141 F. Supp. 437, 441-43 (N.D. Cal. 1956) (comparing insignificant nature of in-district sales with steel industry as a whole).  For these reasons, venue is improper in the District North Dakota under Section 12, and plaintiff therefore cannot rely on its nationwide service clause.  Thus, the Clayton Act is not a statutory basis for establishing personal jurisdiction over Moving Defendants in North Dakota.

**D.    Jurisdiction Over Moving Defendants Pursuant To Section 12 Does Not Comport With Due Process.**

Because Section 12 does not provide a statutory basis for personal jurisdiction, the Court need not reach the question of whether the exercise of jurisdiction over Moving Defendants in North Dakota would satisfy the demands of due process.  In any event, exercising jurisdiction over Moving Defendants pursuant to Section 12 would not meet the requirements of due process.

When a federal statute provides the basis for personal jurisdiction, courts apply Fifth Amendment due process analysis to determine whether the assertion of personal jurisdiction comports with "fair play and substantial justice."  *Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 945 (11th Cir. 1997).  While this analysis considers a defendant's national contacts, courts recognize that a defendant with sufficient national contacts may still "be unduly burdened by the assertion of jurisdiction in a faraway and inconvenient forum."  *Id.* at 947.  Thus, "fairness" and "reasonableness" must be taken into account in any Fifth Amendment due process analysis.  *Id.* at 945; *see also Fraser v. Smith*, 594 F.3d 842, 849 n.10 (11th Cir. 2010).  To evaluate whether the exercise of jurisdiction is fair and reasonable, "courts should balance the burdens imposed on the individual defendant against the federal interest involved in the litigation."  *BCCI*, 119 F.3d at 946.

**1.    Litigating In North Dakota Would Impose An Unreasonable Burden On Moving Defendants.**

Courts rely on the factors used for the Fourteenth Amendment fairness analysis in analyzing inconvenience under the Fifth Amendment.  *Fraser*, 594 F.3d at 849 n.10; *BCCI*, 1119 F.3d at 946.  The factors considered are: "the burden on the defendant," "the interests of the forum State," "the plaintiff's interest in obtaining relief," "the interstate judicial system's interest in obtaining the most efficient resolution of controversies," and "the shared interest of the several

States in furthering fundamental substantive social policies." *Asahi Metal Indus. Co. v. Super. Ct. of Cal.*, 480 U.S. 102, 113 (1987) (citation omitted).

Here, the fairness and reasonableness requirements of due process are not met.  Moving Defendants do not solicit or conduct business in North Dakota.  Indeed, Moving Defendants operate only in certain geographic regions of the country, which is the crux of plaintiff's claims against them.  Moving Defendants therefore would be burdened by having to "mount an effective defense against potentially substantial claims in a remote jurisdiction to which [they have] no real ties." *Butler v. Beer Across Am.*, 83 F. Supp. 2d 1261, 1268 (N.D. Ala. 2000). North Dakota does not have a significant interest in adjudicating a dispute regarding health insurers that have neither registered nor been licensed to operate within its borders and that do not have constitutionally sufficient contacts with it.  And, plaintiff can obtain relief in another forum, because she is free to bring her claims in federal courts in the states where Moving Defendants operate.

## 2.    Federal Interests Do Not Outweigh This Burden.

Plaintiff does not and cannot make a showing that there is a federal interest in litigating her antitrust claims in North Dakota, which outweighs the burden such litigation would impose on Moving Defendants.  *See BCCI*, 119 F.3d at 948.  This analysis involves consideration of the following factors:  the federal policies advanced by the statute; the relationship between nationwide service of process and the advancement of these policies; the connection between the exercise of jurisdiction in the forum and the plaintiff's vindication of her federal right; and concerns of judicial efficiency and economy.  *Id.*

Here, the burden on Moving Defendants outweighs any purported federal interests for multiple reasons.  First, there is no clear congressional intent for all alleged antitrust co-conspirators to be tried in the same court to justify subjecting Moving Defendants to litigation in

a distant and inconvenient forum.  *See, e.g.*, *Anrig v. Ringsby United*, 603 F.2d 1319, 1322-23

(9th Cir. 1979); *West Virginia v. Morton Int'l, Inc.*, 264 F. Supp. 689, 694-96 (D. Minn. 1967);

*Westor Theatres v. Warner Bros. Pictures*, 41 F. Supp. 757, 762 (D.N.J. 1941).  Quite the

opposite is true.  Congress was concerned with the inconvenience imposed on defendants forced

to defend cases in far-flung jurisdictions, and for that reason rejected proposals allowing

plaintiffs to "force trial in districts far removed from" where a defendant carries on its business.

*United States v. Nat'l City Lines*, 334 U.S. 573, 588 (1948) ("In adopting § 12 Congress was not

willing to give plaintiffs free rein to haul defendants hither and yon at their caprice.").  Absent

this congressional intent, plaintiff cannot show a federal interest or policy to justify forcing

defendants to litigate these claims in a district far from their home states.

 Second, the inclusion of a nationwide service of process provision in Section 12 does not

indicate congressional intent to provide nationwide venue or nationwide personal jurisdiction.

*See KM Enters.*, 725 F.3d at 730 ("[T]he fact that Congress passed Section 12 with the intent to

expand venue in antitrust cases does not indicate that Congress wanted *nationwide* venue.");

*Daniel*, 428 F.3d at 425 ("[N]othing in the legislative history suggests that any member intended

to extend service of process *beyond* the carefully expanded venue provision.").

 Third, plaintiff can vindicate her federal rights in federal courts with personal jurisdiction

over Moving Defendants.  Fourth, any concerns of judicial efficiency and economy are already

being served by the MDL process.  Further, requiring actions to be filed in Moving Defendants'

home jurisdictions promotes judicial economy because collection of any monetary judgment

would have to be pursued in those jurisdictions anyway.  *See Willingway*, 870 F. Supp. at 1111.

For all of these reasons, the burden on Moving Defendants outweighs any purported federal

interests in litigating this case in North Dakota.

## II.   PLAINTIFF CANNOT ESTABLISH PERSONAL JURISDICTION UNDER THE STATE LONG-ARM STATUTE.

### A.   Legal Standard

To exercise personal jurisdiction over Moving Defendants in the absence of a federal statute authorizing service, the Court must find that (1) Moving Defendants are amenable to service of summons under the laws of North Dakota, and (2) there is a constitutionally sufficient relationship between Moving Defendants and North Dakota. *See Guinness Imp. Co. v. Mark VII Distribs., Inc.*, 153 F.3d 607, 613 (8th Cir. 1998); Fed. R. Civ. P. 4(k). The North Dakota long-arm statute, N.D. R. Civ. P. 4(b), extends jurisdiction to the limits allowed by the U.S. Constitution. *Master v. Epps*, No. 1:14-cv-129, 2014 WL 6626439, at *1 (D.N.D. Nov. 21, 2014). Thus, under the Fourteenth Amendment, a court may only exercise personal jurisdiction in North Dakota when a defendant has minimum contacts with the forum state and the exercise of personal jurisdiction does not offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

Moving Defendants' contacts with the forum state must be substantial such that they would "reasonably anticipate being haled into court there." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474-75 (1985). The Eighth Circuit employs "a five-factor test to determine whether asserting personal jurisdiction over a party comports with due process: '(1) the nature and quality of the contacts with the forum state; (2) the quantity of those contacts; (3) the relationship of those contacts with the cause of action; (4) [the forum state]'s interest in providing a forum for its residents; and (5) the convenience or inconvenience to the parties.'" *Eagle Tech. v. Expander Americas, Inc.*, 783 F.3d 1131, 1136 (8th Cir. 2015) (citation omitted).

Courts also consider whether the defendant's contacts support either general or specific jurisdiction. *Goodyear Dunlop Tires Ops., S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011).

General jurisdiction requires "continuous and systematic general business contacts" with the forum, such that the defendant is "essentially at home" there. *Id.* at 2851, 2857. Specific jurisdiction is appropriate where (1) the defendant has purposefully directed his activities at the forum state or purposefully availed himself of the privilege of conducting business in that state, and (2) the alleged injury arises out of the defendant's forum-related activities. *Burger King*, 471 U.S. at 472.

Plaintiff has not alleged facts showing that Moving Defendants have "continuous and systematic" contacts with North Dakota to support a finding of general jurisdiction. Plaintiff also has not alleged the requisite minimum contacts to support a finding of specific jurisdiction. Thus, there is no personal jurisdiction over Moving Defendants in North Dakota under either a general or specific theory of jurisdiction.[11]

### B. Plaintiff Does Not Establish Minimum Contacts Because It Has Not Demonstrated Purposeful Availment By Moving Defendants.

#### 1. Participation In BlueCard Or Similar Programs Does Not Constitute Purposeful Availment.

Plaintiff alleges that Moving Defendants have the requisite minimum contacts with North Dakota because they have members within North Dakota or transact business in North Dakota through the BlueCard program or similar national programs. Compl. ¶ 13(f). These allegations do not establish that Moving Defendants have minimum contacts with North Dakota.

First, the fact that some of Moving Defendants' subscribers receive health benefits in North Dakota through BlueCard or other programs does not show that Moving Defendants have "purposefully availed" themselves of the privilege of conducting business in North Dakota. As the Fifth Circuit has held, non-resident insurers' membership in a national program that

---

[11] Because plaintiff does not allege that general jurisdiction exists over them, Moving Defendants address only plaintiff's allegations of minimum contacts purportedly supporting the exercise of specific jurisdiction.

facilitates the provision of services to insureds around the country at discounted rates does not

constitute purposeful availment.  *See Choice Healthcare v. Kaiser Found. Health Plan of Colo.*,

615 F.3d 364, 369-71 (5th Cir. 2010) (citing *St. Luke's Episcopal Hosp. v. La. Health Serv. &*

*Indem. Co.*, Civ. A. No. H-08-1870, 2009 WL 47125, at **9-10 (S.D. Tex. Jan. 6, 2009)); *see*

*also Resolution Trust Corp. v. First Am. Bank*, 796 F. Supp. 1333, 1337 (C.D. Cal. 1992)

(holding that bank's participation in national electronic fund clearinghouse, which allowed

participating members' clients to obtain wire transfers in foreign states from home banks through

member entities, did not establish purposeful availment).[12]

The Fifth Circuit focused on the fact that there was "no [forum] contract," no "contract

between the parties," and no "substantial connection to [the forum]."  *Choice Healthcare*, 615

F.3d at 371; *accord Resolution Trust*, 796 F. Supp. at 1337.  The same is true with BlueCard.

Plaintiff specifically alleges that Moving Defendants do not contract with subscribers in North

Dakota (Compl. ¶¶ 4, 6, 317, 321, 329), and there is no substantial connection to North Dakota.[13]

*See Choice Healthcare*, 615 F.3d at 371-72.  Even if providers could identify a relevant contract,

courts do not find minimum contacts where "the contract was centered around [defendants']

operations outside" the forum state.  *McFadin v. Gerber*, 587 F.3d 753, 760-61 (5th Cir. 2009)

(finding no minimum contacts where the "hub of activities" was not in the forum and the

---

[12] *See also Int'l Air Med. Servs. Inc. v. Triple-S Salud Inc.*, No. 15-cv-149, 2015 WL 5158832, at *4 (D. Ariz. Sept. 3, 2015) (finding "that merely contracting with an organization that does business in all fifty states does not thereby subject [a Blue Cross Blue Shield plan] to the jurisdiction of courts throughout the country"); *Whittaker v. Med. Mut. of Ohio*, 96 F. Supp. 2d 1197, 1201 (D. Kan. 2000) (reliance on Blue Plan in forum state to process claims does not equal purposeful availment of forum state); *Bayada Nurses, Inc. v. Blue Cross Blue Shield of Mich.*, No. 08-cv-1241, 2008 WL 2945388, at *4, *7 (E.D. Pa. July 30, 2008) (holding conclusory allegations of BlueCard membership insufficient to support finding of general jurisdiction and payment through BlueCard insufficient to establish specific jurisdiction).

[13] Plaintiff has not alleged that any of the Moving Defendants contract with any subscribers in North Dakota.  But even if Moving Defendants had a few isolated contracts in North Dakota, it is well-established that a contract between a state resident and an out-of-state defendant does not automatically establish sufficient minimum contacts.  *Walden v. Fiore*, 134 S. Ct. 1115, 1122-23 (2014) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985)).

connection with the forum was merely "the fortuity of plaintiffs' residence there"); *see also Scullin Steel Co. v. Nat'l Ry. Utilization Corp.*, 676 F.2d 309, 314 (8th Cir. 1982) (dismissing action for lack of personal jurisdiction even though defendant contracted with a forum resident and sent payment to the forum).

Second, merely paying for services provided to subscribers in the forum is not sufficient to establish personal jurisdiction. *See Bayada Nurses*, 2008 WL 2945388, at *7 (collecting cases); *Berg v. Blue Cross & Blue Shield of Utica-Watertown, Inc.*, No. C-93-2752, 1993 WL 467859, at **3-4 (N.D. Cal. Nov. 2, 1993); *see also Scullin*, 676 F.2d at 314 ("the making of payments in the forum state, and the provision for delivery within the forum state are secondary or ancillary factors and cannot alone provide the 'minimum contacts' required by due process"). Even payment for services in North Dakota using rates established by local Blue Plans does not constitute purposeful availment. *Choice Healthcare*, 615 F.3d at 371-72 (rejecting argument that participation in program allowing defendant to pay discounted rates constituted purposeful availment of forum).

Third, the affidavits of Moving Defendants demonstrate that they do not operate or solicit business in North Dakota,[14] and the small numbers of members residing or receiving treatment there does not support a finding of purposeful availment. *See Fastpath, Inc. v. Arbela Techs. Corp.*, 760 F.3d 816, 824 (8th Cir. 2014) (holding no personal jurisdiction where there was no suggestion "that [defendant]'s marketing efforts were actively, exclusively, or even predominantly targeted at [forum] customers"). A defendant who does not operate or solicit

---

[14] Although one of BCBS-NE's subsidiaries has an ownership interest in a company based in North Dakota, the Eighth Circuit has consistently held that personal jurisdiction over a defendant based on its subsidiary's activities is only proper when the subsidiary is the defendant's alter ego. *Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co., KG*, 646 F.3d 589, 596 (8th Cir. 2011). Providers have not alleged that BCBS-NE is subject to personal jurisdiction based on one if its subsidiary's contacts. *See* Compl. ¶ 12.

business in the forum state does not purposefully direct its activities there by incidentally

providing services to customers based in the forum state and collecting payments from them.

*See Hi-Tex, Inc. v. TSG, Inc.*, 87 F. Supp. 2d 738, 744 (E.D. Mich. 2000); *see also Intrust Fin.*

*Corp. v. Entrust Fin. Credit Union*, No. 11-cv-1312, 2012 WL 2993893, at **4-6 (D. Kan. July

20, 2012) (regional company that knowingly accepted and provided services to limited number

of customers in Kansas, outside of its primary state of operation, did not purposefully avail itself

of the privilege of conducting business in Kansas even though it contracted with entities outside

of its primary state of operation to enable customers to receive services in other states).

Each Moving Defendant's principal business activity is solicitation of business in its

home area.  *See* Compl. ¶¶ 6, 8, 249, 317.  Moving Defendants do not solicit members or issue

insurance contracts or policies in North Dakota.  Thus, the "hub" of Moving Defendants'

business activities is in their home area.  *See McFadin*, 587 F.3d at 761.  Any services that

Moving Defendants provide to residents of or visitors to North Dakota are incidental to the

business that Moving Defendants solicit and transact in their home states.  Moving Defendants

have not purposefully availed themselves of the privilege of conducting business in North

Dakota just because some of their accounts have a small number of employees receiving

treatment or residing outside of their home areas.  *See Fastpath*, 760 F.3d at 823 ("minimum

contacts analysis looks to the defendant's contacts with the forum State itself, not the defendant's

contacts with persons who reside there"); *Scullin*, 676 F.2d at 313 ("It is a defendant's contacts

with the forum state that are of interest in determining if in personam jurisdiction exists, not its

contacts with a resident.") (citation omitted).

### 2.       Moving Defendants Do Not Have Minimum Contacts Based On Alleged Intentional Causation Of Injury Or Tortious Conduct.

Plaintiff alleges that Moving Defendants are subject to specific jurisdiction because their intentional acts caused injury in North Dakota, they knew their acts were likely to cause injury within North Dakota, and they committed a tort within North Dakota.  Compl. ¶ 13(b), (c), (e).  When a plaintiff alleges minimum contacts based on wrongful activity causing injury in the forum state, courts apply the "effects" test, which requires the plaintiff to show that the defendant (1) committed an intentional act, (2) expressly aimed at the forum state, which (3) caused harm that the defendant knew was likely to be suffered in the forum state.  *Calder v. Jones*, 465 U.S. 783, 789-90 (1984).  A defendant's conduct that merely affects a plaintiff with a connection to the forum state, however, does not authorize jurisdiction.  *Walden*, 134 S. Ct. at 1126.  A defendant's acts must be "uniquely or expressly aimed at the forum state" or "performed for the very purpose of having [their] consequences felt in the forum state." *Viasystems*, 646 F.3d at 594 (citation omitted).

Plaintiff here has not alleged that Moving Defendants directed or "uniquely or expressly aimed" wrongful conduct at North Dakota.  As plaintiff alleges, Moving Defendants do not solicit business in North Dakota and only offer insurance to employers and individuals in their home states.  *See* Compl. ¶¶ 309, 317, 329.  If some of those employers happen to have employees who live in North Dakota, those third-party contacts do not suggest that Moving Defendants targeted any forum resident.[15]  Thus, this theory does not save plaintiff here.

---

[15] As an alternative to her other jurisdictional theories, plaintiff alleges that Moving Defendants have minimum contacts with North Dakota because "each defendant is a party to an anticompetitive agreement with a resident of this state, which agreement is performed in whole or in part within this state."  Compl. ¶ 13(d).  This allegation appears related to plaintiff's conspiracy theory of jurisdiction, which is addressed in Section II.E below.

**C.**   **Plaintiff's Antitrust Causes Of Action Are Not Related To Moving Defendants' Contacts With North Dakota.**

Even if plaintiff could show that Moving Defendants purposefully availed themselves of the privilege of conducting activities in North Dakota, she cannot show that her claims arise out of or relate to the alleged contacts with North Dakota. *See Burger King*, 471 U.S. at 472; *Master*, 2014 WL 6626439, at *2. Specific jurisdiction is only "warranted when the defendant purposely directs its activities at the forum state and the litigation 'result[s] from injuries . . . relating to [the defendant's] activities [in the forum state.]'" *Myers v. Casino Queen, Inc.*, 689 F.3d 904, 912-13 (8th Cir. 2012) (citation omitted).

As a matter of pure logic, the minimal number of Moving Defendants' members residing in or receiving treatment in North Dakota does not constitute a substantial relationship to plaintiff's antitrust claims grounded in allegations that Moving Defendants operate in exclusive territories in their home states. *See* Compl. ¶¶ 4, 6-8, 304-21. Plaintiff's allegations that "most" Blue Plans "do not operate outside of their Service Areas" actually demonstrates a lack of contacts in North Dakota—the very opposite of a substantial connection between plaintiff's antitrust claims and Moving Defendants' contacts with North Dakota. *See* Compl. ¶ 317.

**D.**   **Based On Their Limited Contacts With North Dakota, Moving Defendants Would Not Reasonably Anticipate Being Haled Into Court There.**

Plaintiff cannot establish specific personal jurisdiction by arguing that Moving Defendants knew or expected that their members would seek treatment in North Dakota or that their business activities would affect residents of North Dakota. While foreseeability is a consideration, it "has never been a sufficient benchmark for personal jurisdiction under the Due Process Clause" on its own. *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 295 (1980). The key is a defendant's conduct and connection with the forum state. *Id.*

The awareness of Moving Defendants that a small number of their members may seek treatment in North Dakota is insufficient to establish personal jurisdiction.  *See Choice Healthcare*, 615 F.3d at 370-71; *Perez v. Pan Am. Life Ins. Co.*, 96 F.3d 1442, 1442 (5th Cir. 1996).  None of the contacts that plaintiff alleges demonstrates that Moving Defendants should reasonably anticipate being haled into court in North Dakota, particularly in the absence of a substantial connection with North Dakota.  *See Fastpath*, 760 F.3d at 824.

### E.     Plaintiff's Vague Conspiracy Allegations Do Not Establish Personal Jurisdiction.

Whether a court can exercise personal jurisdiction under a conspiracy theory is a question of state law.  *Personalized Brokerage Servs., LLC v. Lucius*, No. 05-cv-1663, 2006 WL 208781, at *4 (D. Minn. Jan. 26, 2006) (conspiracy jurisdiction "is a question of state law"); *accord Davis v. A & J Elecs.*, 792 F.2d 74, 76 (7th Cir. 1986) ("there is not [ ] an independent federal 'civil co-conspirator' theory of personal jurisdiction").  Moving Defendants have not located any cases indicating that North Dakota has adopted the conspiracy theory of personal jurisdiction.  Absent case law holding that North Dakota recognizes this theory, it cannot serve as the basis for personal jurisdiction over Moving Defendants in North Dakota.[16]

---

[16] While the Eighth Circuit has not addressed the issue, one federal district court in North Dakota has applied the theory.  *See In re N.D. Pers. Injury Asbestos Litig. No. 1*, 737 F. Supp. 1087, 1098 (D.N.D. 1990); *see also SFRL, Inc. v. Galena State Bank & Trust Co.*, No. 10-cv-4152, 2011 WL 4479065, at *4 (D.S.D. Sept. 22, 2011) (court found no Eighth Circuit decisions "addressing the merits of the conspiracy theory of jurisdiction").  The district court's decision, however, did not cite any North Dakota case law and instead relied on case law from two jurisdictions outside the Eighth Circuit.  *See In re N.D. Pers. Injury Asbestos Litig. No. 1*, 737 F. Supp. at 1098 (citing *Wegerer v. First Commodity Corp. of Boston,* 744 F.2d 719, 727 (10th Cir.1984) and *Gudaitis v. Adomonis,* 643 F.Supp. 383, 385 (E.D.N.Y.1986)).  Moreover, plaintiff still has to satisfy the due process requirements of minimum contacts and reasonableness.  *Hart v. Salois*, 605 F. App'x 694, 699 (10th Cir. 2015) ("in addition to pleading a prima facie conspiracy, due process requires that a defendant also have minimum contacts with the forum"); *Cleft of the Rock Found. v. Wilson,* 992 F. Supp. 574, 584–85 (E.D.N.Y. 1998) (applying minimum contacts and reasonableness inquiries).  For the reasons set forth Sections I.D and II.A-D, they cannot do so.

F.    **Exercising Personal Jurisdiction Over Moving Defendants Would Not Comport With "Fair Play And Substantial Justice."**

Because Moving Defendants do not have sufficient contacts with North Dakota, the Court need not inquire into the other factors, such as the forum state's interest or the convenience of the parties, to decide whether exercising personal jurisdiction would be reasonable, *i.e.*, comport with "fair play and substantial justice." *See Burger King*, 471 U.S. at 476. But if the Court were to undertake this inquiry, the exercise of personal jurisdiction in this case would not comport with "fair play and substantial justice" for the reasons discussed in Section I.D above.

## III.   VENUE IS IMPROPER UNDER SECTIONS 4 AND 16 AND 28 U.S.C. § 1391.

Because the District of North Dakota lacks personal jurisdiction over Moving Defendants, the question of venue there is moot. *See Browning Enter., Inc. v. Rex Iron Mach. Prods. Co.*, 504 F. Supp. 2d 1217, 1220 (N.D. Ala. 2007). Venue is not proper in the District for the additional reason that neither Sections 4 or 16 of the Clayton Act, nor the general federal venue statute, allows for venue over Moving Defendants there.

### A.    There Is No Venue Under Sections 4 And 16 Of The Clayton Act.

Section 4 of the Clayton Act provides that venue is proper in the district in which the defendant "resides or is found or has an agent." 15 U.S.C. § 15(a). A corporation "resides" in a district if it is incorporated or registered to do business in the state, and is found "in any district where it 'is continuously doing business or carrying on any substantial part of its activities.'" *Pocahontas Supreme Coal Co., Inc. v. Nat'l Mines Corp.*, 90 F.R.D. 67, 69 (S.D.N.Y. 1981) (citation omitted). Moving Defendants are not incorporated or registered to do business in North Dakota, and do not do business there. Further, Moving Defendants do not have an agent there.

Section 16 of the Clayton Act is similarly unavailing because "it does not confer venue . . . , but rather, provides that a 'person . . . shall be entitled to sue for and have injunctive

relief, *in any court of the United States having jurisdiction over the parties*.'"  *Black v. JP Morgan Chase & Co.*, No. 2:10-CV-848, 2011 WL 4102802, at *2 n.4 (W.D. Pa. Aug. 10, 2011) (citing 15 U.S.C. § 26), *report and recommendation adopted*, 2011 WL 4089379 (Sept. 14, 2011).  With no personal jurisdiction over Moving Defendants as set forth above, plaintiff cannot rely on Section 16 to establish venue.

**B.      There Is No Venue Under 28 U.S.C. § 1391.**

No provision of the general federal venue statute, 28 U.S.C. § 1391(b), provides a basis for venue.  For venue under § 1391(b)(1), one of the defendants must reside in the district and all of the defendants must reside in the state in which the district is located.  Corporate defendants are "deemed to reside" in any judicial district in which they are subject to personal jurisdiction. 28 U.S.C. § 1391(c)(2).  Because the Moving Defendants are not subject to personal jurisdiction in North Dakota, venue is not proper under § 1391(b)(1).

For venue under § 1391(b)(2), courts conduct a two-part inquiry:  (1) identify what acts or omissions "gave rise" to plaintiff's claims; and (2) determine whether a "substantial part" of the acts or omissions took place in the district.  *Jenkins Brick Co. v. Bremer*, 321 F.3d 1366, 1372 (11th Cir. 2003).[17]  Plaintiff does not allege facts showing that any relevant acts, let alone "substantial acts," giving rise to her antitrust claims took place in the District.

Finally, § 1391(b)(3) provides that venue is proper in any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to the action, *if* there is no district in which an action may otherwise be brought under § 1391(b).  Because plaintiff has not

---

[17] The federal venue statute protects defendants and "Congress therefore meant to require courts to focus on relevant activities of the defendant, not of the plaintiff."  *Id.* at 1371-72.

shown that there is no other district in which venue is proper, § 1391(b)(3) does not apply.

*Murdoch v. Rosenberg & Assocs., LLC*, 875 F. Supp. 2d 6, 10 (D.D.C. 2012).

## <u>CONCLUSION</u>

Moving Defendants respectfully request that the Court dismiss the claims brought against them in this case for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2) and for improper venue under Fed. R. Civ. P. 12(b)(3).

June 13, 2016                                  Respectfully submitted,

*/s/ Peter W. Zuger*
Ronald H. McLean (#03260)
Peter W. Zuger (#06282)
SERKLAND LAW FIRM
10 Roberts Street
P.O. Box 6017
Fargo, ND 58108-6017
(701) 232-8957
rmclean@serklandlaw.com
pzuger@serklandlaw.com

*Counsel for Defendants Blue Cross Blue Shield of Arizona, Blue Cross and Blue Shield of Kansas, Inc., Blue Cross and Blue Shield of Kansas City, Blue Cross of Idaho Health Service, Inc., Blue Cross and Blue Shield of Nebraska, and HealthNow New York Inc. d/b/a BlueCross BlueShield of Western New York and BlueShield of Northeastern New York*